UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEREMY S.,

                      Plaintiff,                              21-CV-1190Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #17.

## BACKGROUND

Plaintiff injured his back at work on October 1, 2011. Dkt. #5, p.354. He returned to work after several weeks and continued to treat his symptoms with physical therapy, chiropractic care, deep tissue massage, and injections. Dkt. #5, p.354. An MRI report dated February 29, 2012 revealed a small central protrusion of the L4-5 disc with mild canal narrowing. Dkt. #5, p.354.

On June 4, 2014, Louis D. Nunez, M.D. noted that plaintiff had not lost any time from work as a result of his back injury, but was restricted from lifting more

than 20 pounds and instructed to avoid lifting, bending and twisting. Dkt. #5, p.341. Utilizing the New York State Workers' Compensation Board Guidelines, Dr. Nunez opined that there was no further indication for aggressive treatment, noting physical examination showed an excellent range of motion of the thoracolumbar spine, with only mild complaints of pain on straight leg raising on the left side. There was no frank disc herniation that would be amenable to surgical decompression. Dkt. #5, p.345. Dr. Nunez opined that "there is absolutely no indication for surgery." Dkt. #5, p.345.

On February 13, 2015, Loubert S. Suddaby, M.D., performed a lateral L4-5 discectomy with interbody fusion, which was complicated by a venous thrombosis. Dkt. #5, pp.354 & 357. Plaintiff reported a lack of improvement in his symptoms and was unable to return to work following this surgery. Dkt. #5, pp.354-355. It was determined that there was a lack of robust bone formation in the bone graft, leading to a posterolateral lumbar fusion with pedicle screw stabilization at L4-5 on March 25, 2016. Dkt. #5, pp.354 & 357. Plaintiff reported diminished leg and back pain for a period of approximately six months following his recovery from this surgery. Dkt. #5, p.354. He continued to treat his symptoms with physical therapy and injections without success. Dkt. #5, p.355.

An MRI report dated September 25, 2018 revealed stable postoperative changes at L4-5 without evidence of spinal canal stenosis or disc protrusion in the lumbar region. Dkt. #5, p.356.

An EMG/NCV conducted on October 5, 2018 indicated lumbar radiculopathy at the L4-5 levels bilaterally. Dkt. #5, p.357.

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on November 29, 2019, at the age of 33, alleging disability beginning March 1, 2018, due to degenerative disc disease, back injury and depression. Dkt. #4, pp.63 & 106.

An MRI report dated December 4, 2019 revealed a minimal subligamentous annular bulge at L3-4. Dkt. #5, p.355. Reevaluation of the MRI resulted in an addendum indicating no sizeable or discrete disc protrusion or foraminal compromise or pathologic enhancement at L3-4. Dkt. #5, p.356.

Upon Independent Neurosurgical Examination of plaintiff on March 3, 2020, by Richard Kanoff, D.O., plaintiff was able to heel walk, toe walk and squat 90% of the way to the floor and rise. Dkt. #5, p.359. He was able to straight leg raise to 80 degrees and was limited to lumbar flexion of 15 degrees. Dkt. #5, p.360. Dr. Kanoff reserved opinion regarding permanency of plaintiff's injury in light of plaintiff's report that he was awaiting authorization for a lateral discectomy and fusion at the L3-4 level. Dkt. #5, p.355 & 360-361.

On June 1, 2020, Dr. Suddaby performed a lateral L3-4 lumbar discectomy with interbody fusion. Dlt. #5, p.367.

Dr. Kanoff re-examined plaintiff on October 27, 2020. Dkt. #5, p.367. Plaintiff reported that he had begun physical therapy and could walk up to one-half mile. Dkt. #5, pp.367 & 370. Plaintiff reported that his sitting tolerance was 30 minutes and his standing tolerance was 30-60 minutes. Dkt. #5, p.367. He drove himself to the appointment, stopping along the way. Dkt. #5, p.367. Although the report states that plaintiff "has been able to resume his prior recreational activities of golf and bowling," Dr. Kanoff subsequently noted that this statement was a typographical error and should have read that plaintiff "has been unable to resume his prior recreational activities of golf and bowling." Dkt. #4, p.14. Upon examination, plaintiff was able to heel walk, toe walk and squat 70% of the way to the floor, rising independently. Dkt. #5, p.368. He was able to straight leg raise to 90 degrees and was limited to lumbar flexion of 12 degrees. Dkt. #5, p.369. Dr. Kanoff noted a new finding of decreased perception to pin in the left anterior thigh. Dkt. #5, p.369.

On November 2, 2020, Thoms Suchy, M.D., a pain management specialist, noted that plaintiff continued to improve following his surgery and reported significant relief of his pain, with improved functioning, on gabapentin. Dkt. #5, p.382.

On January 21, 2021, plaintiff appeared with counsel, along with medical expert ("ME"), John F. Kwock, M.D., and vocational expert, Connie Standhart ("VE"), and testified at an administrative hearing conducted remotely before Administrative Law Judge ("ALJ"), Mary Mattimore. Dkt. #4, pp.59-105. At the outset of the hearing, the ME acknowledged that he had not reviewed the medical records relating to plaintiff's

surgery on June 2, 2020 or an independent medical examination ("IME"), on October 27, 2020. Dkt. #4, pp.67-70. After taking time to review this evidence, the ME advised the ALJ that this information "doesn't really change anything," explaining, "the only thing that it'll change is, I'll have to say, status post-decompression fusion lumbar spine on three different occasions, and morbid obesity, that those would be the two severe impairments that can be established." Dkt. #4, pp.70-71. The ME opined that although plaintiff has experienced three operations in the lumbar spine, and even upon review of the IME following the third surgery, there was no evidence of nerve root involvement as required to meet or equal the listings. Dkt. #4, p.72. With respect to plaintiff's residual functional capacity ("RFC"), the ME testified that despite plaintiff's three surgeries, there does not appear to have been marked and widespread pathology of plaintiff's lumbar spine from his first MRI through the present. Dkt. #4, p.73. As a result, the ME opined that plaintiff was capable of light work[1] with no need for a sit/stand and walk option. Dkt. #4, pp.73-75. More specifically, the ME opined that plaintiff

> can sit for six hours out of the eight, stand and walk for six hours of the eight. There would be no upper extremity limitations. Therefore, such things as overhead reaching, lateral reaching, hand and fingering, feeling, pushing and pulling with the arms can be done with no limitations bilaterally. Use of the feet for pushing, pulling the operations of pedals, levers, et cetera, is frequent bilaterally.

Dkt. #4, p.74. The ME further opined that postural limits would be appropriate, including

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1527(b).

no more than frequent climbing of stairs and ramps, balancing and kneeling. Dkt. #4, p.74. Climbing of ladders or scaffolds, as well as stooping, crouching, and crawling, would be limited to no more than occasional. Dkt. #4, p.74. Plaintiff would also be limited to no more than occasional work in high, exposed, unprotected heights and proximity to heavy and moving machinery. Dkt. #4, p.74.

When questioned about the October 2020 IME indicating that plaintiff was not yet able to return to work following the third surgery, the ME noted that the examination was "not particularly suggestive of . . . any particular problem" and that the only finding was "some numbness in the anterior thigh on the left side" with "very benign" x-ray readings that caused him to question "how the other physician would have had the evidence to say that [plaintiff] still needed this much protection . . . at this point in time" because "there's no strong evidence as to why this person would be having this much . . . difficulty on a clinical, anatomical, or physiological basis." Dkt. #4, pp.76-78. The ME noted that he does not put much weight on the observation of muscle spasms because an individual can contract his muscles to create spasms. Dkt. #4, p.83.

Upon questioning by plaintiff's attorney regarding plaintiff's consistent reports of significant pain and inability to sit for more than 15 minutes, the ME responded that the objective evidence wolud not suggest such severity. Dkt. #4,. p. 79. Specifically, the ME testified that he did not "think there's objective evidence to support the subjective complaints" plaintiff was reporting. Dkt. #4, p.80.

Plaintiff testified that he is a high school graduate and worked as a laborer offloading trucks at a plant. Dkt. #4, pp.85 & 92. Plaintiff had been volunteering in the computer lab at his local library three days a week, four hours a day, from Spring of 2017 until his most recent surgery. Dkt. #4, pp.84 & 89. His pain was minimal at the time he started volunteering, but by the end of 2017 he began experiencing lower back pain into his left leg, which feels like it is asleep. Dkt. #4, pp.87 & 90-91. He can't sit for more than a half hour or stand still for more than 10 minutes and constantly walks around, pacing the house all day to keep his leg from locking up. Dkt. #4, pp.87-88. Although the level of pain can ebb and flow depending on the day, it is always present. Dkt. #4, p.91. He testified that he averages three good days and four bad pain days per week. Dkt. #4, p.91. He can only drive short distances without stopping for a break. Dkt. #4, p.93. Plaintiff testified that he lives with his parents and that he is capable of doing things around the house, but his mother generally does everything. Dkt. #4, p.94. He is unable to bend over to pick things off the floor, but can squat. Dkt. #4, p.95. He spends his day doing his physical therapy exercises and pacing while playing video games. Dkt. #4, p.96. Although he is on an anti-depressant and does get nervous, he did not feel that his mental health impacted his ability to work. Dkt. #4, p.98.

The VE classified plaintiff's past work as a material handler, which she classified as a heavy exertion, semi-skilled position. Dkt. #4, p.99. When asked to assume an individual with plaintiff's age, education and past work experience who was limited to light exertion with only frequent operation of foot controls bilaterally; frequent climbing of stairs and ramps; frequent balancing; occasional kneeling; occasional

climbing of ladders, ropes, scaffolds; occasional stooping, kneeling, crouching and crawling; occasional work at unprotected heights and with heavy machinery and moving mechanical parts who could perform simple, routine work requiring simple workplace decisions not at a production rate pace, with minimal changes in workplace processes and settings, the VE testified that such an individual could work as a cafeteria attendant, routing clerk and housekeeping cleaner, each of which were unskilled, light exertion positions. Dkt. #4, pp.99-1001. If plaintiff was limited to sedentary work[2] with the same nonexertional limitations, the VE testified that such an individual could work as a document preparer, food and beverage order clerk or surveillance system monitor, each of which were unskilled, sedentary positions. Dkt. #4, pp.101-102. The VE testified that the light positions would be mostly standing and walking which should accommodate plaintiff's pacing, but noted that the sitting positions might take plaintiff off task if he was unable to incorporate his pacing into his duties. Dkt. #4, p.102. The VE further advised that employees would typically tolerate no more than one absence per month and no more than 15% time off-task during the course of a work day. Dkt. #4, pp.101-102.

On February 2, 2021, plaintiff underwent functional capacity testing with Jill Mikulec, PT. Dkt. #4, pp.19-33. The results of this evaluation suggested that plaintiff

---

[2]s  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

Case 1:21-cv-01190-HKS   Document 18   Filed 09/30/23   Page 9 of 16

would be limited to sedentary work with the following limitations: frequent walking, pushing, reaching and fingering; occasional lifting, standing, sitting, carrying, pulling, balancing, kneeling, crouching, and handling; no climbing or stooping. Dkt. #4, p.20.

The ALJ rendered a decision that plaintiff was not disabled on February 3, 2021. Dkt. #4, pp.37-53.

The Appeals Council denied review on September 1, 2021. Dkt. #4, p.6. The Appeals Council declined to consider the functional capacity evaluation because it did not show a reasonable probability that such evidence would change the outcome of the decision. Dkt. #4, p.6.

Plaintiff commenced this action seeking review of the Commissioner's final decision on November 3, 2021. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

        To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which

exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c) & 20 C.F.R. § 416.920c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c) & 20 C.F.R. § 416.920c(b)(2).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1) & 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and

nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2) & 20 C.F.R. § 416.920c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity between his amended alleged onset date of March 1, 2018 and his last insured date of September 30, 2020; (2) plaintiff's status post lateral lumbar discectomy and fusion in February of 2015, status post instrumented lumbar fusion surgery in March of 2016, status post lateral lumbar discectomy and fusion surgery in June of 2020, obesity, and chronic pain syndrome constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform a full range of light work with nonexertional limitations of no more than frequent operation of foot controls bilaterally, frequent climbing of stairs, ramps and

balancing, occasional climbing of ladders, ropes, and scaffolds, occasional stooping, kneeling, crouching, crawling, and exposure to unprotected heights, heavy machinery, or moving mechanical parts, simple routine work and workplace decisions not at a production rate pace within minimal changes in workplace processes and settings; and (5) plaintiff was not capable of performing his past relevant work as a material handler, which was a semi-skilled, heavy exertion position, but was capable of working as a cafeteria attendant, routing clerk, and housekeeping cleaner, each of which were unskilled, light exertion positions or as a document preparer, order clerk or surveillance system monitor, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.37-53.

      Plaintiff challenges the ALJ's reliance upon the opinion of Dr. Kwock, a non-examining physician, and argues that the ALJ's vague reasons for finding the ME's opinion very persuasive and adopting it in its entirety did not constitute a proper evaluation of the supportability or consistency of the evidence of record given the questionable integrity of Dr Kwock's testimony and factual errors upon which his opinion was based. Dkt. #11-1, p.31. Plaintiff questions Dr. Kwock's expertise regarding spinal impairments; reputation for partiality; and apparent bias against plaintiff's subjective complaints of pain. Dkt. #11-1, pp.26-31. Plaintiff notes that Dr. Kwock was unaware of significant evidence of record, including a third spinal surgery and an IME report referencing that surgery and implied that plaintiff's multiple spinal surgeries were unwarranted. Dkt. #11-1, pp.28-29. Plaintiff also argues that the ALJ failed to properly evaluate treating source opinions, including that of his surgeon, Dr. Suddaby, and

consultative examiner, Dr. Kanoff. Dkt. #11-1, p.32. Plaintiff also notes the ALJ's reliance upon Dr. Kanoff's statement, which Dr. Kanoff conceded was incorrect, that plaintiff had resumed bowling and golfing, as supporting Dr. Kowck's opinion. Dkt. #11-1, p.32.

The Commissioner argues that the ALJ's RFC is supported by substantial evidence and that the ALJ's reliance upon Dr. Kwock was proper because his opinion was consistent with the objective medical evidence as well as plaintiff's reported activities of daily living. Dkt. #14-1, pp.9-13. The Commissioner disputes plaintiff's attack upon Dr. Kwock's expertise and impartiality and notes that Dr. Kwock was able to review and incorporate evidence relating to plaintiff's third surgery into his testimony at the administrative hearing. Dkt. #14-1, pp..27-28. The Commissioner argues that the ALJ appropriately determined that IME opinions from Dr. Nunez, which preceded the amended alleged onset date, were based upon standards applicable to workers' compensation claims and did not include a functional assessment. Dkt. #14-1, pp.13-16. Similarly, the Commissioner argues that the ALJ appropriately determined that the opinion of plaintiff's physical therapist, which was consistent with the ME's opinion, was somewhat persuasive despite being rendered prior to amended alleged onset date, because it was based upon objective examination and included functional limitations. Dkt. #14-1, p.16. The Commissioner argues that the ALJ properly evaluated treatment notes form plaintiff's surgeon and consultative examination findings by Dr. Lee, Dr. Slaten, Dr. Levy and Dr. Kanoff, despite their reference to standards applicable to workers' compensation claims. Dkt. #14-1, pp.18-21. Overall, the Commissioner argues

that the ALJ exercised her discretion to resolve conflicts within the record. Dkt. #14-1, p.26.

The Court agrees that the ALJ failed to properly assess the medical opinion evidence in this case and that the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence. The ALJ found Dr. Kwock's hearing testimony persuasive because he supported his findings with his knowledge as a specialist and with specific citations to the voluminous record. Dkt. #4, p.47. However, Dr. Kwock was unaware of plaintiff's third surgery and related treatment prior to the start of the hearing and the record is devoid of any citations to the medical record by Dr. Kwock. Dkt. #4, pp.67-70. Moreover, the ALJ cited an erroneous statement by Dr. Kanoff that plaintiff had been able to resume his hobbies of golf and bowling as consistent with Dr. Kwock's opinion. Dkt. #4, p.51.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11), is granted and the matter is remanded to the Commissioner for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **September 30, 2023**

                                       _s/ H. Kenneth Schroeder, Jr._
                                     **H. KENNETH SCHROEDER, JR.**
                                     **United States Magistrate Judge**